UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUSTIN HAKEEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-2674 (RBW) |
| | ) | |
| ALEJANDRO N. MAYORKAS, | ) | |
| Secretary, U.S. Department of | ) | |
| Homeland Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

The plaintiff, Justin Hakeem, brings this civil action against the defendant, Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security ("DHS"), asserting claims of: (1) discrimination based upon his national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), see Complaint ("Compl.") ¶¶ 37–49, ECF No. 1; (2) hostile work environment, in violation of Title VII, see id. ¶¶ 50–61; (3) discrimination based upon his disability, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C §§ 701–795 ("Rehabilitation Act"), see id. ¶¶ 62–70; and (4) retaliation, in violation of Title VII, see id. ¶¶ 71–84. Currently pending before the Court is the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), or in the alternative, to transfer the matter to the Eastern District of Virginia. See Motion to Dismiss ("Def.'s Mot.") at 1, ECF No. 11. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), ECF No. 11-1;

(continued . . .)

must grant in part and deny without prejudice in part the defendant's motion and transfer the case to the Eastern District of Virginia.

## I.     BACKGROUND

**A.     Factual Background**

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified. The plaintiff is Syrian, see Compl. ¶ 37, and "suffers from a mental disability caused by generalized anxiety disorder," id. ¶ 63. During the relevant time period, the plaintiff was employed by the DHS as "a Senior Federal Air Marshal . . . with the Transportation Security Administration [('TSA'),]" id. ¶ 17, "headquartered in Springfield, Virginia[,]" Pl.'s Opp'n at 6. During all relevant times, the "[p]laintiff's second-line supervisor was Supervisory Air Marshal in Charge[,] Chad Thompson[,]" Compl. ¶ 18, and the "[p]laintiff's third-line supervisor was Deputy Supervisory Air Marshal in Charge[,] Jamal Dyer[,]" id. ¶ 19, both of whom are "American[,]" id. ¶¶ 18, 19, with no prior Equal Employment Opportunity activity and whose disabilities, if any, are unknown, see id.

On October 20, 2018, the plaintiff's "performance rating [was lowered] from 4.63 to 4.33" by "management[.]" Id. ¶ 20. Additionally, "[o]n or about November 19, 2018, [the p]laintiff was presented with his performance appraisal dated October 22, 2018, which noted 'REFUSED' to sign on the signature line[,]" id. ¶ 21, resulting in the plaintiff being "accused by management of being insubordinate for asking questions about the performance review procedures[,]" id. ¶ 22. The plaintiff then "spoke to a manager" on or about December 17, 2018,

---

(. . . continued)
(2) the Declaration of Sandra Mosso ("Mosso Decl."), ECF No. 11-2; (3) the Declaration of Michelle Calcano ("Calcano Decl."), ECF No. 11-3; (4) the Plaintiff's Opposition to the Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 14; and (5) the Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), ECF No. 15.

who "did not speak back in return." Id. ¶ 23.  "On December 26, 2018, [the p]laintiff initiated counseling with the [TSA's] Equal Employment Opportunity [('EEO')] office regarding allegations of discrimination and a hostile work environment based on his [mental] disability [ ], national origin[, i.e., Syrian], religion, race, gender, [and] reprisal [for] []prior EEO activity[]." Id. ¶ 9.

After counseling was initiated, "[o]n or about January 20, 2019, [the p]laintiff learned he was not selected for the Primary Watch Officer position." Id. ¶ 24.  Shortly thereafter, on February 6, 2019, and February 7, 2019, "[the p]laintiff learned from the Federal Air Marshal Service, Medical Programs Section, that he was not medically cleared for any duty status." Id. ¶ 25.  And, "[o]n or about February 20, 2019, [the p]laintiff was not interviewed or selected for a lateral reassignment." Id. ¶ 26.  On April 7, 2019, the plaintiff "filed a formal complaint of discrimination with the [TSA's] [EEO] [o]ffice alleging discrimination and a hostile work environment based on his [mental] disability [ ], national origin [ ], religion, race, gender, [and] reprisal [for] []prior EEO activity[]." Id. ¶ 10.

On July 1, 2019, "management denied [the p]laintiff's request to be placed on Leave Without Pay[,]" id. ¶ 27, and "issued [the p]laintiff an Incident Tracking Report [ ] for being Absent Without Leave[,]" id. ¶ 28.  The next day, "[the p]laintiff spoke to management and was ignored." Id. ¶ 29.  Subsequently, on July 5, 2019, and July 7, 2019, respectively, "management denied [the p]laintiff's request [to be] reassign[ed] to the West Coast field office[,]" id. ¶ 30, and "denied [his] request for a shift change[,]" id. ¶ 31.  In July 2019, "[the p]laintiff was [also] required to submit a doctor's note for all medical appointments." Id. ¶ 32.  Furthermore, on August 9, 2019, "management advised [the p]laintiff that he is a 'Special Case,'" id. ¶ 33, that he should "utilize sick leave for a shift that was previously worked," id. ¶ 35, and to leave a meeting

3

"without [having his] questions [ ] answered[,]" id. ¶ 34.  And, "[o]n or about August 11, 2019, management advised [the p]laintiff that his request for a flex schedule was denied, and he must utilize sick leave."  Id. ¶ 36.

"On November 22, 2019, [the p]laintiff requested a Final Agency Decision" regarding his complaint of discrimination with the TSA's EEO office.  Id. ¶ 11.  The decision was issued by the TSA "[o]n February 4, 2021, . . . giving the [p]laintiff [thirty] days to file an appeal with the Equal Employment Opportunity Commission [('EEOC')]."  Id. ¶ 12.  "On February 25, 2021, [the p]laintiff filed a timely appeal with the [EEOC,]" id. ¶ 13, and "[o]n June 6, 2022, the [EEOC] issued a decision on [the p]laintiff's appeal[,] giving [the p]laintiff [ninety] calend[ar] days to file a civil action in an appropriate United States District Court[,]" id. ¶ 14.

**B.      Judicial Procedural Background**

The plaintiff filed his Complaint in this case on September 6, 2022.  See Compl. at 1.  On March 21, 2023, the defendant filed his motion to dismiss.  See Def.'s Mot. at 1.  The plaintiff filed his opposition on May 4, 2023, see Pl.'s Opp'n at 1, and the defendant filed his reply in support of his motion on May 11, 2023, see Def.'s Reply at 1.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) authorizes a party to move for dismissal of a complaint for "improper venue[.]"  Fed. R. Civ. P. 12(b)(3).  In considering a motion to dismiss for lack of proper venue under Rule 12(b)(3), a court must "accept[] the plaintiff['s] well-pled factual allegations regarding venue as true, . . . draw[] all reasonable inferences from those allegations in the plaintiff['s] favor, and . . . resolve[] any factual conflicts in the plaintiff['s] favor."  Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003) (internal quotation marks omitted).  In assessing a Rule 12(b)(3) motion, a court may "consider material outside of

the pleadings." Taylor v. Shinsei, 13 F. Supp. 3d 81, 85 (D.D.C. 2014). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). However, "[t]o prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." Wilson v. Obama, 770 F. Supp. 2d 188, 190 (D.D.C. 2011) (internal quotation marks omitted).

### III.     ANALYSIS

The defendant moves to dismiss the plaintiff's Complaint "for failure to state a claim upon which relief can be granted [pursuant to Rule 12(b)(6)] and for improper venue [pursuant to Rule 12(b)(3)]." Def.'s Mem. at 1. The defendant argues that "this Court should dismiss [the p]laintiff's [C]omplaint with prejudice in its entirety or, alternatively, transfer the matter to the Eastern District of Virginia[,]" id. at 5–6, "where the case should have been filed in the first instance[,]" id. at 28. The Court will first address whether venue is proper in this District. Because the Court ultimately concludes that the District of Columbia is not a proper venue for the plaintiff's suit, the Court will then analyze whether the case should be dismissed or transferred to another district.

**A.     Whether the District of Columbia is a Proper Venue in this Case**

The plaintiff alleges that "[v]enue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3)[,]" as "Secretary Mayorkas is an officer of the [DHS], which is headquartered in the District of Columbia[,]" and "Secretary Mayorkas performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia." Compl. ¶ 4. In its motion to dismiss, the defendant argues that the District of Columbia is an improper venue for this action because (1) "[the

5

p]laintiff does not allege that any events occurred in the District of Columbia;" (2) "he does not claim that his personnel files are maintained in the District;" and (3) "he does not aver that he attempted to transfer [his office location] to the District." Def.'s Mem. at 27. Furthermore, the defendant argues that "the Court should decline to consider [the p]laintiff's claim that venue is appropriate[,]" id., because the defendant "resides . . . within the District of Columbia[,]" Compl. ¶ 4, as "this [ ] residual basis for jurisdiction is only available when the defendant cannot be found within any of the districts provided for by the first three bases" of the applicable venue statute, Def.'s Mem. at 27 (quoting Slaby v. Holder, 901 F. Supp. 2d 129, 134 (D.D.C. 2012)). In his opposition, the plaintiff acknowledges that, "[a]lthough[] the [DHS] is headquartered within Washington, D[.]C[.], . . . [he] worked with the [TSA] headquartered in Springfield, Virginia." Pl.'s Opp'n at 6. Based on these facts, the plaintiff "agree[s] to a transfer of venue to the United States District Court for the Eastern District of Virginia." Id.

"The general venue statute, 28 U.S.C. § 1391(b), does not apply in Title VII actions." Stout v. Napolitano, 18 F. Supp. 3d 9, 11, (D.D.C. 2014). Instead, "[v]enue in Title VII cases . . . is governed by 42 U.S.C. § 2000e-5(f)(3)." Webster v. Mattis, 279 F. Supp. 3d 14, 18 (D.D.C 2017). Moreover, "Title VII's venue provision also applies to claims brought under the Rehabilitation Act." Dehaemers v. Wynne, 522 F. Supp. 2d 240, 247 (D.D.C. 2007); see also Beaird v. Gonzales, 495 F. Supp. 2d 81, 83 n.3 (D.D.C. 2007) ("The proper venue for litigating a Rehabilitation Act claim is determined by the special venue provisions of Title VII[.]"). Under Title VII's special venue provisions, a plaintiff may bring an action in any judicial district in which (1) "the unlawful employment practice is alleged to have been committed," (2) "the employment records relevant to such practice are maintained and administered," or (3) "the aggrieved person would have worked but for the alleged unlawful employment practice."

6

42 U.S.C. § 2000e-5(f)(3).  "Only if the defendant is not found within any of these districts can a plaintiff rely on a fourth possible location—'the judicial district in which the [defendant] has his principal office.'"  Taylor, 13 F. Supp. 3d at 86 (quoting 42 U.S.C. § 2000e-5(f)(3)); see also Slaby, 901 F. Supp. 2d at 134 (explaining that "this fourth residual basis for jurisdiction is only available when the defendant cannot be found within any of the districts provided for by the first three bases" (internal quotation marks omitted)).  Moreover, § 2000e-5(f)(3) "governs all Title VII [and Rehabilitation Act] claims and supersedes any other venue provision governing actions in federal court."  Taylor, 13 F. Supp. 3d at 86.

For the following reasons, the Court concludes that the District of Columbia is not a proper venue for the plaintiff's suit.

**1. The Location Where the Alleged Unlawful Employment Practice Was Committed**

First, the District of Columbia is not a proper venue based on the location "in which the unlawful employment practice is alleged to have been committed[.]"  42 U.S.C. § 2000e-5(f)(3).  The plaintiff asserts that the alleged discrimination occurred "during the course of his employment" with the TSA, Compl. ¶ 2, but he does not allege that any of the employment actions occurred in the District of Columbia, see generally id.  By contrast, the defendant provides a declaration of Sandra Mosso, the "Section Chief of Human Capital within the Workforce Services Group, Operations Management Division for [the TSA's] Law Enforcement/Federal Air Marshal Service ([']LE/FAMS['])[,]" Mosso Decl. ¶ 1, which states that "[t]he factual allegations, including the employment actions and employment decisions, described in the Complaint occurred in Chantilly, Virginia or Herndon, Virginia[,]" id. ¶ 7.  According to the Mosso Declaration, the plaintiff "was an LE/FAMS employee within [the] TSA" who "entered on duty with [the] FAMS on March 1, 2009, and left federal service with the

7

FAMS on or about July 18, 2020." Id. ¶ 4.  The Mosso Declaration further represents that "[f]rom October 1, 2018[,] through November 16, 2019, [the] plaintiff worked for LE/FAMS at the Systems Operation Control Section, Mission Operations Center, which is located in Herndon, Virginia[,]" and "[f]rom November 17, 2019[,] through July 18, 2020, [the] plaintiff worked for LE/FAMS at the Washington Field Office, which is located in Chantilly, Virginia." Id. ¶ 6.  Moreover, the Mosso Declaration indicates that both the Chantilly, Virginia, and Herndon, Virginia TSA offices are located in Fairfax County, Virginia.  See id. ¶ 2.  In his opposition, the plaintiff does not contest the defendant's assertion that the relevant employment actions occurred in Chantilly, Virginia or Herndon, Virginia, instead "agree[ing] to a transfer of venue to the United States District Court for the Eastern District of Virginia."  Pl.'s Opp'n at 6.

Because the unlawful employment actions allegedly occurred between October 20, 2018, see Compl. ¶ 20, and August 11, 2019, see id. ¶ 36, while the plaintiff was working in a TSA office in Herndon, Virginia, see Mosso Decl. ¶ 6, such employment actions allegedly occurred in Fairfax County, see id. ¶ 2, which is located in the Eastern District of Virginia, see Eastern District of Virginia Jurisdiction, United States District Court of the Eastern District of Virginia, https://www.vaed.uscourts.gov/eastern-district-virginia-jurisdiction (last visited on May 23, 2024).  Therefore, the Court concludes that the Eastern District of Virginia, rather than the District of Columbia, is the proper venue for the plaintiff to bring this suit under the first venue option for Title VII and Rehabilitation Act claims.  See 42 U.S.C. § 2000e-5(f)(3).

2. **The Location Where the Relevant Employment Records are Maintained**

Second, the District of Columbia is not a proper venue based on the location "in which the employment records relevant to such practice are maintained and administered[.]" Id.  The defendant represents that "the TSA maintains and administers [the p]laintiff's electronic

8

personnel record 'on servers in [Macon,] Georgia and [Boyers,] Pennsylvania,'" Def.'s Mem. at 26 (quoting Calcano Decl. ¶ 4), and has provided a declaration of Michelle Calcano, "a Human Resource Specialist in the Executive Resources Division" of the TSA, Calcano Decl. ¶ 1, to attest to the location of the records, see id. ¶ 4 (stating that the "TSA employees' personnel records, including [the p]laintiff['s] . . . personnel record, are stored on servers in Georgia and Pennsylvania"). The defendant also represents that "[t]he TSA does not maintain a hard copy of [the p]laintiff's personnel record." Def.'s Mem. at 27; see also Mosso Decl. ¶ 8. In his Complaint, the plaintiff has not alleged that his employment records are maintained in the District of Columbia, see generally Compl., and he does not refute the defendant's representations regarding the location of the records in his opposition, see Pl.'s Opp'n at 6. Therefore, the Court concludes that venue is improper in this District under Title VII's second venue provision as well.

### 3. The Location Where the Plaintiff Would Have Worked but for the Alleged Unlawful Employment Practice

The District of Columbia is also not a proper venue under Title VII's third venue provision, as it is not a location "in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e-5(f)(3). According to the Mosso Declaration, which the plaintiff does not contest, the plaintiff worked at TSA offices located in "Herndon, Virginia" and "Chantilly, Virginia" during the time period relevant to this case. Mosso Decl. ¶ 6. Although the plaintiff alleges that he was seeking "a reassignment to the West Coast field office[,]" which was denied by TSA management, Compl. ¶ 30, the plaintiff does not allege that he attempted to transfer to an office location in the District of Columbia, see generally id. Consequently, the plaintiff would have either continued work at an office in Virginia or in a West Coast field office but for the alleged unlawful employment practices. Thus, the Court

9

concludes that venue in the District of Columbia is also improper under Title VII's third venue provision.

### 4. The Location Where the Defendant Has His Principal Office

Finally, the plaintiff cannot rely on Title VII's residual venue provision to establish venue in the District of Columbia. The defendant, Alejandro Mayorkas, is "sued in his official capacity as the Secretary for the [DHS]," Compl. ¶ 6, "which is headquartered in the District of Columbia[, where] Secretary Mayorkas performs a significant amount of his official duties," id. ¶ 4. Secretary Mayorkas does not dispute that his principal office is in the District of Columbia, but instead argues that "since [the p]laintiff cannot carry his burden that the proper venue is [the District of Columbia] under the first three factors, the Court should decline to consider [the p]laintiff's claim that venue is appropriate under the fourth factor." Def.'s Mem. at 27.

The residual venue provision of Title VII allows a plaintiff to bring suit in "the district where the defendant has its principal place of business only if the defendant cannot be found in any other districts where venue is appropriate." James v. Booz-Allen, 227 F. Supp. 2d 16, 24 (D.D.C. 2022) (emphasis added); see also 42 U.S.C. § 2000e-5(f)(3) (stating that "if the [defendant] is not found within any [of the districts provided for by the first three grounds for proper venue], [ ] an action may be brought within the judicial district in which the [defendant] has his principal office"). As the Court's analysis of Title VII's first three venue provisions reveals, see supra Sections III.A.1–3, the plaintiff could properly assert venue in other judicial districts, including the Eastern District of Virginia. Thus, the Court need not analyze whether the District of Columbia is a proper venue under the residual provision. See Booz-Allen, 227 F. Supp. 2d at 24 (concluding that "the court need not consider the fourth prong of the Title VII venue statute in determining whether venue is proper in this district" where an "analysis of the

first three prongs reveal[ed] that the plaintiff could properly assert venue in several other districts"); Abraham v. Burwell, 110 F. Supp. 3d 25, 30 (D.D.C. 2015) (stating that "the [c]ourt need not consider prong [four]" in assessing whether the District of Columbia is a proper venue where "Maryland [wa]s the proper venue" under the first three prongs).

Because the plaintiff has failed to establish that any of the alleged unlawful acts occurred in the District of Columbia, that any employment records related to his claim are maintained or administered in the District, or that he would have been employed in the District but for the defendant's actions, Title VII's specific venue provisions do not permit the plaintiff to file his claim in this Court.[2]

### B.     Whether to Transfer or Dismiss the Plaintiff's Suit for Improper Venue

The Court's conclusion that the District of Columbia is not a proper venue for the plaintiff's Title VII and Rehabilitation Act claims does not end the Court's inquiry. Rather, the Court must decide whether to "dismiss [the suit], or if it be in the interest of justice, transfer [the] case to any district [ ] in which it could have been brought." 28 U.S.C § 1406(a). However, before making this decision, the Court must ensure that "[t]he transferee court [ ] ha[s] both personal jurisdiction and venue." Haley v. Astrue, 667 F. Supp. 2d 138, 142 (D.D.C. 2009); see also Sharp Elecs. Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1230 (D.C. Cir. 1981) (stating that a transfer under 28 U.S.C. § 1406(a) "would require the district court to decide as a

---

[2] The defendant urges the Court to dismiss the plaintiff's Complaint rather than transfer the case to a proper venue because the Complaint "suffers from substantive problems with a foreordained outcome, namely, dismissal" for failure to state a claim upon which relief can be granted. Def.'s Reply at 3 (internal quotation marks omitted). However, because the Court "has [ ] determined that the District of Columbia is not the appropriate venue for this case, the Court will not go on to reach the [merits of the defendant's] 12(b)(6) motion." Thomas v. Sotera Def. Sols., Inc., 40 F. Supp. 3d 181, 186 (D.D.C. 2014); see also Haley v. Astrue, 667 F. Supp. 2d 138, 142 n.6 (D.D.C. 2009) (declining to "reach the merits of [the] defendants' motion to dismiss for failure to state a claim" in a Title VII action where "venue was improper" in the District of Columbia); Stout, 18 F. Supp. 3d at 13 (declining "to resolve [the d]efendant's 12(b)(6) [m]otion to [d]ismiss" the plaintiff's Title VII suit, despite the defendant's request that the court do so, because venue was improper).

preliminary matter that venue and jurisdiction would be proper as to [the] defendant[]" in the proposed transferee court). Therefore, the Court will first address whether the plaintiff's suit "could have been brought" in the Eastern District of Virginia. 28 U.S.C. § 1406(a).

In this case, both prerequisites for transfer to the Eastern District of Virginia are satisfied. First, the Eastern District of Virginia is a proper venue for the plaintiff's Title VII and Rehabilitation Act claims because it is the district in which "the unlawful employment practice is alleged to have been committed[,]" 42 U.S.C. § 2000e-5(f)(3). See supra Section III.A.1. Second, the Eastern District of Virginia can exercise personal jurisdiction over the defendant because the DHS—through its TSA LE/FAMS Mission Operations Center and its TSA LE/FAMS Washington Field Office, where the plaintiff worked, see Mosso Decl. ¶ 6—conducts business in Herndon, Virginia and Chantilly, Virginia, see Va. Code § 8.01-328.1 (2017) ("A court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth."), and therefore "should reasonably anticipate being haled into court there," GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); cf. Capital Bank Int'l Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 75 (D.D.C. 2003) ("[T]he exercise of personal jurisdiction must comply with constitutional due process[,] [which] . . . is satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. These minimum contacts must be grounded in some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus

invoking the benefits and privileges of its laws." (fourth alteration in original) (internal citations and internal quotation marks omitted)).

Having concluded that venue and personal jurisdiction are present in the Eastern District of Virginia, the Court next considers whether transfer of this case to that district is in the interest of justice. "Whether transferring this case is in the interest of justice rests within the sound discretion of the court." Booz-Allen, 227 F. Supp. 2d at 25 (citing Hayes v. RCA Serv. Co., 546 F. Supp. 661, 665 (D.D.C. 1982)). In general, "the interest of justice requires transferring [ ] cases [where venue is improper] to [an] appropriate judicial district rather than dismissing them." Williams v. GEICO Corp., 792 F. Supp. 2d 58, 64 (D.D.C. 2011); see also Booz-Allen, 227 F. Supp. 2d at 25 ("[W]hen a plaintiff fails to carry his burden to demonstrate proper venue" in Title VII cases, "courts have routinely transferred such cases to neighboring jurisdictions[.]"). In determining whether it is in the interest of justice to transfer a case, the court can consider factors such as "whether transfer would prejudice [the d]efendant's position on the merits[,]" McQueen v. Harvey, 567 F. Supp. 2d 184, 188 (D.D.C. 2008), and whether the plaintiff would be barred from re-filing the suit by the applicable statute of limitations, see Ebron v. Dep't of Army, 766 F. Supp. 2d 54, 59 (D.D.C. 2011) (concluding that "transfer of the case for resolution in the court with proper venue[,]" rather than dismissal, was appropriate where a "re-filed suit would be barred by the applicable . . . statute of limitations for filing a judicial complaint").

Here, the defendant "ha[s] not provided any reason why [he] would be prejudiced if this case was transferred[ ]rather than dismissed[,]" Martin v. U.S. Equal Emp. Opportunity Comm'n, 19 F. Supp. 3d 291, 311 (D.D.C. 2014). See generally Def.'s Mot.; Def.'s Mem.; Def.'s Reply. Indeed, the defendant argues that "the Court should transfer this matter to the Eastern District of Virginia" if the Court does not dismiss the case, Def.'s Mem. at 28, and "does

13

not contest transfer" to that district, Def.'s Reply at 5 n.1.[3]  Moreover, dismissing this suit would require the plaintiff to re-file in the proper venue, which would be barred by the ninety-day statute of limitations.  See 29 C.F.R. § 1614.407(a) (stating that "[a] complainant who has filed an individual [EEOC] complaint . . . is authorized under [T]itle VII . . . [and] the Rehabilitation Act . . . to file a civil action in an appropriate United States District Court . . . within [ninety] days of receipt of the agency final action on [the] individual . . . complaint").  Therefore, the Court concludes that it is "in the interests of justice" to transfer this case to the Eastern District of Virginia, a "district in which [the case] could have been brought."  28 U.S.C § 1406(a).[4]

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny without prejudice in part the defendant's motion.  The case will be transferred to the United States District Court for the Eastern District of Virginia.

**SO ORDERED** this 23rd day of May, 2024.[5]

REGGIE B. WALTON
United States District Judge

---

[3] The Court notes that the plaintiff also agrees that this case should be transferred to the Eastern District of Virginia. See Pl.'s Opp'n at 6 ("[The plaintiff] [ ] agree[s] to a transfer of venue to the United States District Court for the Eastern District of Virginia.").

[4] In his reply, the defendant states that, "[s]hould the Court decline to dismiss this action and instead transfer this matter, the Court should order that [the d]efendant shall have an additional thirty days following arrival of this action in the new venue to file any further response to the Complaint or supplement to [the d]efendant's motion." Def.'s Reply at 5 n.1.  In light of the Court's conclusion that venue is improper in this District, the Court will deny the defendant's request without prejudice.  In the event that the defendant still seeks an additional thirty days to file any further response to the Complaint or supplement his motion to dismiss following the arrival of this action in the United States District Court for the Eastern District of Virginia, he may renew his request in that court.

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.