IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JUSTIN HAKEEM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:24-cv-955 (RDA/WEF) |
| | ) |
| ALEJANDRO MAYORKAS, Secretary, | ) |
| U.S. Department of Homeland Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Alejandro Mayorkas' Motion to Dismiss (Dkt. 35) ("Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 36); Plaintiff's Response in Opposition (Dkt. 38); and Defendant's Reply (Dkt. 39), this Court GRANTS the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Justin Hakeem brings a two-count Amended Complaint alleging that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") by subjecting him to a hostile work

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

environment and discriminating against him in retaliation for his protected activity. Dkt. 30 at 1 ¶ 1.[2]

Plaintiff states that "[d]uring the relevant time period," he was a Senior Federal Air Marshal with the United States Department of Homeland Security, Transportation Security Administration ("TSA"). *Id.* at 2 ¶ 3; *id.* at 4 ¶ 2. Also "[d]uring the relevant time period," Supervisory Air Marshal in Charge ("ASAC") Sukeena Stephens was Plaintiff's first-line supervisor; ASAC Chad Thompson was Plaintiff's second-line supervisor; and Deputy Supervisory Air Marshal in Charge ("DSAC") Jamal Dyer was Plaintiff's third-line supervisor. *Id.* at 4 ¶¶ 3-5. The Amended Complaint suggests that ASAC Stephens has previously engaged in protected activities by indicating "Sukeena Stephens (prior EEO Activity)," but that ASAC Thompson and DSAC Dyer have not. *Id.*

On December 26, 2018, Defendant initiated counseling with the Agency's EEO office regarding allegations of discrimination and a hostile work environment based on his disability, national origin, religion, race, gender, and retaliation. *Id.* at 2 ¶ 7; *id.* at 4 ¶ 6. On January 6, 2019, Plaintiff emailed DSAC Dyer, ASAC Thompson, and Manfred Harpole "regarding discriminatory and retaliatory practices." *Id.* at 4 ¶ 7.

On January 20, 2019, Plaintiff learned from SFAM[3] David Vaughn that Plaintiff was not selected for the Primary Watch Officer position. *Id.* at 4 ¶ 11. Instead, SFAM Vaughn, SFAM Rasheed Lemon, and ASAC Thompson selected David Sheppard, an American and a less

---

[2] Plaintiff's Amended Complaint follows an odd numbering convention whereby Plaintiff restarts the paragraph numbers in each section of his Amended Complaint. For ease of reference, the Court's citations will include the page number as well as the paragraph number.

[3] Plaintiff does not define "SFAM" in the Amended Complaint.

2

experienced Air Marshall, for the position. *Id.* at 4 ¶ 12. On or about February 6 and 7, 2019, Plaintiff learned from the Medical Programs Section of the Federal Air Marshal Service that he was not medically cleared for any duty status. *Id.* at 5 ¶ 13. On February 20, 2019, ASAC Stephens and SAC[4] Jeffrey Buzzi denied Plaintiff's November 5, 2018, request for a lateral reassignment. *Id.* at 5 ¶ 14.

On February 28, 2019, Plaintiff conducted his initial interview with an EEO counselor; thereafter, Plaintiff filed a formal EEO Complaint of Discrimination ("EEO Complaint") on April 7, 2019, "alleging discrimination and a hostile work environment based on his discrimination based on his disability (mental), national origin (Syria), religion, race, gender, reprisal (prior EEO activity)." *Id.* at 3 ¶ 8; *id.* at 4 ¶ 8. On April 9, 2019, ASAC Stephens learned of Plaintiff's EEO Complaint during a telephone call with Plaintiff. *Id.* at 4 ¶ 10.

On July 1, 2019, ASAC Stephens denied Plaintiff's request to be placed on leave without pay ("LWOP") due to the operational needs of the Agency. *Id.* at 5 ¶ 15. That same day, ASAC Stephens also issued Plaintiff an Incident Tracking Report for being absent without leave ("AWOL"). *Id.* at 5 ¶ 16. On July 5, 2019, Harpole denied Plaintiff's request to be reassigned to the West Coast field office. *Id.* at 5 ¶ 17. On July 7, 2019, ASAC Stephens denied Plaintiff's request for a shift change. *Id.* at 5 ¶ 18. ASAC Stephens also required Plaintiff to submit a doctor's note for all medical appointments in July 2019. *Id.* at 5 ¶ 19.

On August 9, 2019, ASAC Stephens told Plaintiff that he is a "Special Case." *Id.* at 5 ¶ 20. ASAC Stephens also told Plaintiff that a meeting called by management was over and that Plaintiff should leave despite his questions not being answered. *Id.* at 5 ¶ 21. ASAC Stephens further advised Plaintiff that he needed to use sick leave for a shift that was previously worked. *Id.* at 5

---

[4] Plaintiff does not define "SAC" in the Amended Complaint.

¶ 22. On August 11, 2019, ASAC Stephens denied Plaintiff's request for a flex schedule and advised him that he must use sick leave. *Id.* at 5 ¶ 23. Plaintiff also emailed ASAC Stephens on August 11, 2019, but the email was ignored. *Id.* at 6 ¶ 24.

### B. Procedural Background

Plaintiff initiated counseling with the Agency's EEO office on December 26, 2018, regarding "allegations of discrimination and a hostile work environment based on his disability (mental), national origin (Syria), religion, race, gender, reprisal (prior EEO activity)." *Id.* at 2-3 ¶ 7. Plaintiff filed a formal complaint with the EEO office regarding the same allegations on April 7, 2019. *Id.* at 3 ¶ 8. The Agency issued a Final Agency Decision on February 4, 2021, giving Plaintiff thirty days to appeal the decision with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3 ¶ 10. On February 25, 2021, Plaintiff appealed the decision to the EEOC, which issued its decision on June 6, 2022, granting Plaintiff 90 days to file a civil action in a United States District Court. *Id.* at 3 ¶¶ 11-12.

Plaintiff filed a civil suit against Defendant in the United States District Court for the District of Columbia on September 6, 2022. Dkt. 1. On May 23, 2024, the case was transferred to this District. Dkts. 17; 18; 19. Defendant filed a motion to dismiss on July 16, 2024. Dkt. 25. Plaintiff filed the operative Amended Complaint on August 6, 2024. Dkt. 30. Plaintiff alleges that Defendant subjected him "to a hostile work environment based on reprisal," asserting that his "supervisors engaged in conduct sufficiently material to deter protected activity." *Id.* at 6 ¶¶ 26-27. Plaintiff also brings a discrimination claim, alleging that he "was treated differently and subjected to disparate and retaliatory treatment, in comparison to employees with no prior EEO activity, that Defendant employed." *Id.* at 8 ¶ 39. After Plaintiff filed his Amended Complaint, the original motion to dismiss was denied as moot. Dkt. 31.

4

Defendant filed the instant Motion to Dismiss Plaintiff's Amended Complaint on August 27, 2024. Dkt. 35. Plaintiff filed a Response in Opposition on September 10, 2024. Dkt. 38. Defendant filed its Reply on September 16, 2024. Dkt. 39.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). However, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Prosa*, 2022 WL 394465, at *14 (quotation omitted).

III.  ANALYSIS

Plaintiff asserts two counts against Defendant: (i) a hostile work environment claim and (2) a discrimination based on reprisal claim.  Dkt. 30 at 6-8.  Defendant seeks to dismiss both claims.  For ease of reference, the Court will address Count 2 first.

A.  Retaliation Claim (Count 2)[5]

Count 2 alleges that "[a]s an employee of Defendant, Plaintiff was treated differently and subjected to disparate and retaliatory treatment, in comparison to employees with no prior EEO activity, that Defendant employed."  Dkt. 30 at 8 ¶ 39.  Specifically, Plaintiff asserts that "Defendant has subjected Plaintiff to adverse employment actions, including marking Plaintiff Absence Without Leave [sic], denying request for reassignment, non-selection to lateral reassignment, and otherwise deprived Plaintiff of his rights as enjoyed by his co-workers with no prior EEO activity."  *Id.* at 8 ¶ 40.  Defendant seeks dismissal of the Amended Complaint on the basis that Plaintiff has not demonstrated that his protected activity is causally related to the purported adverse actions.  Dkt. 36 at 9.

To state a *prima facie* retaliation claim under Title VII, Plaintiff must sufficiently allege "(1) that [he] engaged in protected activity, (2) that the employer took a materially adverse action against [him] and (3) there is a causal connection between the protected activity and the adverse action."  *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019) (internal citations omitted).  Here, the first element is clearly met, but Plaintiff falters in alleging a materially adverse action or a causal connection.

---

[5] Although Plaintiff refers to Count 2 as based on "reprisal," his allegations are more traditionally referred to as retaliation and that is the language that the Court will use.

Plaintiff engaged in protected activity when he sent an email to DSAC Dyer, ASAC Thompson, and Harpole complaining of discriminatory and retaliatory practices on January 6, 2019. Dkt. 30 at 4 ¶ 7; *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) (holding that "an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct"). Plaintiff's filing of his EEO Complaint on April 7, 2019, was also protected activity. Dkt. 30 at 4 ¶¶ 7, 9; *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).[6]

The Court next considers whether Plaintiff has plausibly alleged that Defendant took materially adverse action against him. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006). The resulting "harm must be a '*significant detriment*'" to the plaintiff and "not 'relatively insubstantial or trivial.'" *Laird v. Fairfax Cnty., Va.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N.*, 548 U.S. at 68) (emphasis original). But "misunderstandings, personality conflicts, job performance evaluations, and purely administrative matters" do not rise to the level of actionable retaliation. *Chappell v. Sch. Bd. of City of Va. Beach*, 12 F. Supp. 2d 509, 516 (E.D. Va. 1998).

The Amended Complaint lists several instances of alleged retaliation after Plaintiff reported discriminatory and retaliatory practices to his superiors on January 6, 2019: (1) Plaintiff became aware on January 20, 2019, that SFAM Vaughn, SFAM Lemon, and ASAC Thompson

---

[6] Plaintiff asserts in his opposition brief that he also engaged in protected activity when he began complaining about disparate treatment to leadership on October 20, 2018. Dkt. 38 at 10 (citing Dkt. 38, Exhibit 1, "Report of Investigation"). It is unclear how this assertion resolves the causal link issues discussed *infra*, however, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arnett v. Hodges Law Office, PLLC*, 2019 WL 4195343, at *4 n.13 (E.D. Va. Sept. 4, 2019) (quoting *Mylan Labs, Inc, v. Akzo, N. V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991).

selected another individual for the Primary Watch Officer position instead of Plaintiff; (2) Plaintiff learned on February 6 or 7, 2019, that he was not medically cleared for any duty status[7]; and (3) ASAC Stephens and SAC Buzzi denied Plaintiff's November 5, 2018 request for a lateral reassignment on February 20, 2019.  Dkt. 30 at 4-5 ¶¶ 11-14.

Plaintiff further alleges that he suffered adverse action after he filed an EEO Charge on April 7, 2019: (1) on July 1, 2019, ASAC Stephens denied Plaintiff's request to be placed on LWOP due to operational needs of the Agency and issued Plaintiff an Incident Tracking Report for being AWOL; (2) on July 5, 2019, Harpole denied Plaintiff's request to be reassigned to the West Coast field office; (3) on July 7, 2019, ASAC Stephens denied Plaintiff's request for a shift change; (4) in July 2019, ASAC Stephens required Plaintiff to submit a doctor's note for all medical appointments; (5) on August 9, 2019, ASAC Stephens told Plaintiff that he is a "Special Case" and ended a meeting with Plaintiff without answering Plaintiff's questions; (6) on August 11, 2019, ASAC Stephens denied Plaintiff's request for a flex schedule; and (7) ASAC Stephens ignored Plaintiff's email. *Id.* at 5 ¶¶ 15-24.

Many of the retaliatory acts alleged, however, do not rise to the level of materially adverse actions.  For instance, receiving an Incident Tracking Report for being AWOL, being made to submit doctor's notes, being called a "Special Case" on one occasion, not having one's questions answered during a meeting, and having one's emails ignored by a supervisor can generally be considered "petty slights, minor annoyances, [or] simple lack of good manners." *Burlington*, 548

---

[7] The Amended Complaint does not explain the significance of not being medically cleared for duty status and whether the lack of such clearance affects Plaintiff's employment status as a Senior Federal Air Marshal or his ability to otherwise complete his job responsibilities.  "Given the lack of information surrounding" this allegation, "the Court cannot evaluate such an alleged adverse action as part of Plaintiff's retaliation claim." *Downer v. Prince George's Cnty. Bd. of Educ.*, 2024 WL 3277563, at *18 (D. Md. July 2, 2024).

U.S. at 68; *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997); *see also Wells v. Gates*, 336 F. App'x 378, 383 (4th Cir. 2009) (requesting medical documentation for approval of medical leave was not material adverse action); *Munday v. Waste Mgmt. of N.A., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (giving employee less preferable work assignments, excluding her from meetings, or ignoring her was not material adverse action); *Maine v. Azar*, 2021 WL 3617215, at *27 (D. Md. Aug. 16, 2021) (explaining that "[i]n most circumstances, . . . making disparaging remarks . . . does not typically rise to the level of an adverse employment action"), *aff'd sub nom. Maine v. Becerra*, No. 23-1521, 2024 WL 3949261 (4th Cir. 2024); *Williams v. McDonough*, 2022 WL 16855793, at *6 (W.D. Ky. Nov. 10, 2022) ("Being marked AWOL does not amount to an adverse action").  Similarly, the denials of Plaintiff's requests for a lateral reassignment, a reassignment to the West Coast field office, a shift change, and leave without pay do not, without additional facts to show such denials had some significant detrimental effect, do not qualify as materially adverse actions, as Plaintiff remained a Senior Federal Air Marshal "[d]uring the relevant time period" of the Amended Complaint.  Dkt. 30 at 4 ¶ 2; *see also Forgus v. Mattis*, 753 F. App'x 150, 153 (4th Cir. 2018) (citing *Wheat v. Fla. Parish Juv. Just. Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016) (stating that "mere denial of a reassignment to a purely lateral position (no reduction in pay and no more than a minor change in working conditions), is typically not a materially adverse action" (internal quotation marks omitted)); *Williams v. Newport News Sch. Bd.*, 2021 WL 3674983, at *15 (E.D. Va. Aug. 19, 2021) (explaining that "a reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect" (internal quotations and citations omitted)); *Smith v. McDonough*, 2021 WL 5312301, at *4 (E.D.N.C. Nov. 15, 2021) (dismissing retaliation claim based on "delays, interference, and denials of leave without pay requests").

Likewise, Plaintiff's claim that Defendant failed to select him for the Primary Watch Officer position does not rise to the level of materially adverse action, although it may come close to what is typically considered such action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (explaining that sufficiently severe retaliatory acts include decisions regarding "promotion, transfer, recall, and hiring"). The Amended Complaint, however, does not clarify whether the Primary Watch Officer position was a promotion or a lateral reassignment for Plaintiff. If the position was a promotion, the failure to promote Plaintiff could constitute material adverse action. *Id.* On the other hand, denial of a purely lateral reassignment – one with no reduction in pay or only a minor change in working conditions – is typically not considered material adverse action. *Forgus*, 753 F. App'x at 153 (citing *Wheat*, 811 F.3d at 709). Nevertheless, even if the position was a promotion, Plaintiff fails to provide sufficient details to support a failure-to-promote claim. The Amended Complaint states in a conclusory manner that the individual chosen for the position was "a less experienced Air Marshall," Dkt. 30 at 4 ¶ 12, and that Plaintiff "was the substantially more qualified candidate," *id.* at 6 ¶ 28. But that Plaintiff subjectively viewed himself as more qualified is not enough to push the failure to promote claim across the line from possible to plausible. *See McCleary-Evans v. Md. Dept. of Transp., State Hwy. Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (holding that plaintiff "can only speculate that the persons hired were not better qualified, or did not perform better in the interview, or were not better suited based on experience and personality for the positions"); *Amis v. Pekoske*, 2021 WL 783543, at *3 (W.D.N.C. Mar. 1, 2021) ("Plaintiff makes no allegations that Ms. Gallagher did not meet the GS-14 or private sector qualifications; rather, he simply alleges that he was 'significantly more qualified . . . .' This is nothing more than speculation that Ms. Gallagher was 'not better qualified' than Plaintiff."). The Amended Complaint does not specify the qualifications required for the position, whether Plaintiff

10

met those qualifications, or whether the individual selected did not meet those qualifications. Without these details, the failure to select Plaintiff for the Primary Watch Officer position does not constitute material adverse action and is insufficient to support Plaintiff's retaliation claim. *See Laurent-Workman*, 54 F.4th at 219.

Plaintiff has therefore not demonstrated that Defendant took material adverse action against him, but even if Plaintiff did so, the Amended Complaint fails to establish a causal link between the alleged conduct and Plaintiff's protected activity. To demonstrate causation in a retaliation claim, Plaintiff must either: (1) establish that "the adverse act bears sufficient temporal proximity to the protected activity" or (2) "establish the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781. 783-84 (4th Cir. 2021). Here, Plaintiff merely alleges that certain adverse actions occurred on specific dates, without providing additional facts to suggest that they were caused by his protected activity.

As Defendant notes, the temporal gap between Plaintiff's protected activity and most of the alleged adverse conduct is too substantial to establish causation. Plaintiff engaged in protected activity by sending an email to DSAC Dyer, ASAC Thompson, and Harpole complaining of discriminatory and retaliatory practices on January 6, 2019, and by filing a formal EEO Complaint on April 7, 2019. Dkt. 30 at 4 ¶¶ 7, 9. ASAC Stephens became aware of the EEO Complaint on April 9, 2019, during a telephone conversation with Plaintiff. *Id.* at 4 ¶ 10. The Amended Complaint states that ASAC Stephens and SAC Buzzi denied Plaintiff's request for a lateral reassignment on February 20, 2019. *Id.* at 5 ¶ 14. But this denial occurred prior to ASAC Stephens learning of Plaintiff's protected activity, and Plaintiff does not allege that SAC Buzzi knew of Plaintiff's protected activity. *See Jones v. HCA*, 16 F. Supp. 3d 622 (E.D. Va. 2014) (explaining

11

that "the decisionmaker's knowledge of the protected activity is 'essential to a retaliation claim'" (quoting *Francisco v. Verizon S. Inc.*, 756 F. Supp.2d 705, 725-26 (E.D. Va. 2010))). The Amended Complaint also alleges that, in July 2019, ASAC Stephens denied Plaintiff's request for LWOP, issued Plaintiff an Incident Tracking Report for being absent without leave, denied Plaintiff's request for a shift change, and required Plaintiff to submit doctor notes for medical appointments, and that Harpole also denied Plaintiff's request to be reassigned. Dkt. 30 at 5 ¶¶ 15-19. But July 2019 is approximately three months after Plaintiff engaged in protected activity and after ASAC Stephens became aware of the protected activity in April 2019. Dkt. 30 at 5 ¶¶ 15-19; *see Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (affirming dismissal of retaliation claim where "there was a least a two-month temporal gap between" the plaintiff's protected activity and the alleged retaliatory conduct); *Roberts v. Glenn Industrial Grp.*, 998 F.3d 111, 127 (4th Cir. 2021) ("Although there is no 'bright-line rule' for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link."). The conduct alleged to have occurred in August 2019 is even further removed from Plaintiff's protected activity. Dkt. 30 at 5 ¶¶ 20-24. Given the significant temporal gap between Plaintiff's protected activity and the alleged retaliatory conduct, along with the absence of additional facts to demonstrate a causal link, the retaliation claim fails for lack of causation.

The Amended Complaint states that Plaintiff learned from SFAM David Vaughn that he was not selected for the Primary Watch Officer position on January 20, 2019 – two weeks after he emailed DSAC Dyer, ASAC Thompson, and Harpole complaining of discriminatory and retaliatory practices. Dkt. 30 at 4 ¶¶ 11. While these events are temporally close, the Amended Complaint does not clarify whether SFAM David Vaughn or other decisionmakers involved in the

selection process knew of Plaintiff's protected activity. Without this information, the Court cannot determine whether Plaintiff's non-selection was because of his protected activity. *See Jones*, 16 F. Supp. 3d at 635 (dismissing retaliation claim where plaintiff failed to "articulate who was the 'decisionmaker' responsible for his termination and [did] not allege that the responsible individual even knew of the EEOC charge").

Apparently recognizing his difficulties in this regard, Plaintiff also attempts to establish causation by alleging that "Plaintiff was treated differently and subjected to disparate and retaliatory treatment, in comparison to employees with no prior EEO activity." Dkt. 30 at 8 ¶¶ 39, 46. But this conclusory allegation fails to render his claim plausible because the Amended Complaint fails to identify any specific similarly situated employee without prior EEO activity who experienced more favorable treatment than Plaintiff. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (explaining that a plaintiff needs to show that "similar-situated employees outside the protected class received more favorable treatment"). Accordingly, this vague and conclusory allegation cannot move Plaintiff's claim across the line from possible to plausible.

Count 2 will therefore be dismissed without prejudice, allowing Plaintiff one more opportunity to provide additional details to support his retaliation claim.

### B.   Hostile Work Environment Claim (Count 1)

Count 1 asserts that Plaintiff "was subjected to a hostile work environment based on reprisal (Prior EEO Activity)" because his "supervisors engaged in conduct sufficiently material to deter protected activity." *Id.* at 6 ¶¶ 26-27. Defendant argues that this claim should be dismissed because Plaintiff fails to allege conduct that is sufficiently severe or pervasive to support a hostile work environment claim. Dkt. 36 at 6-9.

To state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct he experienced was: (1) unwelcome; (2) in retaliation for protected conduct; (3) sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment; and (4) imputable to his employer. *Wells v. Gates*, 336 F. App'x 378, 387 (4th Cir. 2009) (quoting *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006)). Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances." *Id.* at 23.

To satisfy the "severe or pervasive" element, Plaintiff "must show not only that [he] subjectively found [his] work environment to be 'hostile or abusive' but also that an 'objectively reasonable' person would have found it to be so." *Harris v. Mayor and City Council of Baltimore*, 429 F. App'x 195, 201 (4th Cir. 2011). Factors relevant to the determination "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Plaintiff "must show that the environment was pervaded by discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive environment." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (quoting *Jennings v. U.N.C.*, 482 F.3d 686, 695 (4th Cir. 2007)). The Fourth Circuit has made clear, however, that "Title VII does not create a general civility code in the workplace" and "complaints premised on nothing more than rude treatment by [coworkers], callous behavior

14

by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations and quotation marks omitted).

Here, Plaintiff may have subjectively perceived his work environment to be hostile, but the Amended Complaint fails to demonstrate that the alleged harassment was objectively severe or pervasive. In support of Count 1, the Amended Complaint alleges that:

> Plaintiff was regularly and continually subjected to harassing conduct which a reasonable employee would consider materially adverse including, but not limited to, being referred to as a "Special Case", being ignored, his requests for LWOP, flex schedule, reassignment and shift change were denied, and he was not being selected for Primary Watch Officer position, when he was the substantially more qualified candidate; all which created a hostile and abusive work environment.

Dkt. 30 at 6 ¶ 28.

These allegations fall short of severe or pervasive conduct for many of the same reasons that they cannot support Plaintiff's retaliation claim. For instance, ASAC Stephens referring to Plaintiff as a "Special Case" and ignoring his emails constitutes, at most, "rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor" which the Fourth Circuit has held is "not actionable under Title VII." *Sunbelt Rentals, Inc.*, 521 F.3d at 315-16 (internal citations and quotation marks omitted); *see also Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 312 (D. Md. 2015) (dismissing hostile work environment claim because "being disrespectful to and yelling at an employee while ignoring her messages" is not severe nor pervasive). Further, the denial of Plaintiff's requests "for LWOP, flex schedule, reassignment and shift change," Dkt. 30 at 6 ¶ 28, appears to be "nothing more than a series of ordinary personnel decisions" that are likewise not actionable under Title VII, *Hemphill v. ARAMARK Corp.*, 2014 WL 1248296, at *14 (D. Md. Mar. 25, 2014), *aff'd,* 582 F. App'x 151 (4th Cir. 2014); *see also Brady v. Bd. of Educ. of Prince*

15

*George's Cnty*, 222 F. Supp. 3d 459, 473 (D. Md. 2016) (describing "claims centered . . . around [the plaintiff's] ability to take leave" as "more accurately described as disagreements with the personnel decisions of her supervisor" that "do not rise to the level of a hostile workplace claim"), *aff'd*, 707 F. App'x 780 (4th Cir. 2018). As discussed *supra*, the Amended Complaint only states that these actions took place without providing additional facts to support an inference that the denials of Plaintiff's various scheduling and reassignment requests were in retaliation for Plaintiff's prior EEO activity, especially since many of these denials occurred months after Plaintiff engaged in protected activity or after Plaintiff's supervisor, ASAC Stephens, learned of the protected activity. Finally, Plaintiff's claim that he was not selected for the Primary Watch Officer position appears to be a discrete act in January 2019,[8] which, standing alone, cannot form the basis of a hostile work environment claim. *Jones v. Town of Spring Lake*, 2020 WL 4587519, at * (E.D.N.C. Aug. 10, 2020) (explaining that "'isolated personnel decisions' cannot form the basis of a hostile work environment claim" (quoting *Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009))), *aff'd*, No. 20-1957, 2202 WL 1467709 (4th Cir. May 10, 2022). As such, these allegations are insufficient to establish that Plaintiff suffered sufficiently severe or pervasive harassment to support his hostile work environment claim.

Accordingly, Count 1 of the Amended Complaint will be dismissed without prejudice because Plaintiff has failed to allege conduct constituting severe or pervasive harassment sufficient to support a Title VII hostile work environment claim.

\*     \*     \*

---

[8] Most of the acts alleged in support of Plaintiff's hostile work environment claim occurred in July and August 2019. Dkt. 30 at 5 ¶¶ 15-24.

16

In sum, while Plaintiff alleges that he experienced a hostile work environment and discrimination in retaliation for his protected activity, as currently pleaded the Amended Complaint fails to state a claim under Title VII. Accordingly, the Court will dismiss Counts 1 and 2 without prejudice, allowing Plaintiff one more opportunity to amend his complaint and address the aforementioned deficiencies.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 35) is GRANTED; and it is

FURTHER ORDERED that Count 1 and Count 2 of the Amended Complaint are DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file an amended complaint on or before February 28, 2025.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties of record.

It is SO ORDERED.

Alexandria, Virginia
January 27, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge